## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KRISTINA TOT, as Administratrix of the Estate of STJEPAN TOT and RANDY STERN, as Executor of the Estate of ANNETTE MONACHELLI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>eCLINICAL WORKS, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No.: 1:18-cv-11658-RGS<br><br>**<u>CLASS ACTION</u>**<br>**<u>FIRST AMENDED COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs KRISTINA TOT and RANDY STERN, by and through their attorneys, complain against the defendant and allege the following:

### <u>INTRODUCTION</u>

1.      Plaintiffs bring this class action against defendant eClinicalWorks, LLC ("ECW"), a leading cloud-based Electronic Health Records ("EHR") vendor in the U.S. used by hospitals, doctors, health groups and other healthcare and medical providers (collectively, "healthcare providers"). Through the actions described below, ECW failed to provide, secure and safeguard the healthcare records of the patients of those healthcare providers, in violation of its duty to those patients.

2.      The accuracy and reliability of those records are central to the health and well-being of every such patient. Every healthcare patient rightfully expects that the integrity of their healthcare records be maintained, i.e., that they are accurate, and further, that their audit logs ensure that any changes or modifications to those records are accurately captured. ECW has

1

violated its duty to those patients by marketing and selling software used by those patients' healthcare providers that failed to maintain the accuracy and integrity of patients' EHRs.

3.     ECW misrepresented to the federal government that its software protected the accuracy and integrity of patients' records when it did not (the subject of a *qui tam* proceeding that the federal government concluded against ECW last year), falsely obtaining certification from the federal government for its software and allowing it to market and sell it to healthcare providers.  As a result, the medical records of millions of patients have been compromised. Patients cannot rely on those records, to their harm.

4.     Pursuant to the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), the U.S. Department of Health and Human Services ("HHS") established the Medicare and Medicaid Electronic Medical Records Incentive Programs (also known as the "Meaningful Use Program").  The Meaningful Use Program provides incentive payments to healthcare providers who demonstrate "meaningful use" of certified EHR technology.  The federal government's actions express a strong public policy in favor of the use of robust EHR technology by healthcare providers.

5.     In marketing and selling its EHR software to healthcare providers throughout the United States, ECW falsely represented to healthcare providers, its certifying bodies and the federal government that its software complied with the requirements for certification.

6.     ECW's software was unable to satisfy certain certification criteria relating to the accuracy and reliability of patient records.  To ensure that its software was certified, ECW:  (a) falsely attested to its certifying body that it met those certification criteria; (b) manipulated its software to pass certification testing without meeting the certification criteria; (c) caused its users to falsely attest to using a certified EHR technology, knowing that ECW's software failed

to comply with the applicable certification criteria; and (d) caused its users to report inaccurate information regarding Meaningful Use objectives and measures in attestations to the Centers for Medicare & Medicaid Services ("CMS").

7.      Since 2011, healthcare providers using ECW's software attested to satisfying the Meaningful Use objectives and measures and thus received incentive payments through the Meaningful Use program.  As the federal government later determined, ECW's software should not have been certified as compliant under the Meaningful Use program.  Had it not been certified, ECW's would not have achieved its level of use among healthcare providers and would not have impacted so many patients' records.

8.      As a result of ECW's failure to meet the certification criteria, ECW's software:

> A.      Periodically displayed incorrect medical information in the right chart panel of the patient screen;
>
> B.      Periodically displayed multiple patients' information concurrently;
>
> C.      In specific workflows, failed to accurately display medical history on progress notes; and
>
> D.      Failed to accurately record user actions via audit logs, and in certain cases, misled users as to events conducted during a patient's treatment.

9.      As a result of these deficiencies, millions of patients nationwide have had their healthcare records compromised.  For example, as to the Progress Notes recorded by a healthcare professional at a patient's visit, neither the patient nor the healthcare provider can be certain as to which date any number of the patient's symptoms first appeared.  By way of further example, upon information and belief the software does not accurately record user actions in an audit log.

10.      Upon information and belief, ECW coded its software to not accurately record

user actions. ECW either intentionally, or by way of gross negligence, egregious conduct or wanton recklessness or carelessness, coded their EHR software in a manner that compromised the integrity and reliability of patients' EHRs.

## THE PARTIES

11.     Kristina Tot is the Administratrix of the Estate of Stjepan Tot.  At the time of his death, Stjepan Tot was a citizen of the State of New York.  Randy Stern is the Administrator of the Estate of Annette Monachelli.  Both Randy Stern and the Estate of Annette Monachelli are citizens of the State of Vermont.

12.     ECW is a privately held software company founded in 1999, incorporated in the State of Delaware and headquartered in the State of Massachusetts.  According to its website, ECW's medical records software is used by 130,000 physicians nationwide.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy exceeds $5,000,000.00 and because ECW is a citizen of the State of Massachusetts, while Plaintiffs are citizens of other States.

14.     The Court has personal jurisdiction over ECW and venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2) because ECW's headquarters are located within this District and a substantial part of the events giving rise to the claims alleged herein occurred within this District.

## LEGAL AND FACTUAL BACKGROUND

### A.     Certified EHR Technology and the Meaningful Use Program

15.     On Feb. 17, 2009, the HITECH Act was enacted to promote the adoption and meaningful use of certified EHR technology. Under the HITECH Act, the HHS Office of the

National Coordinator for Health Information Technology ("ONC") established a certification

program for EHR technology. As part of the certification program, EHR vendors attest to ONC

authorized certification bodies ("ACB") and accredited testing laboratories that their software

meets the certification requirements established by ONC.  The certification bodies and testing

laboratories test and certify that vendors' EHRs are compliant with the certification

requirements.

16.     Through the Meaningful Use program CMS makes incentive payments to

healthcare providers for demonstrating meaningful use of certified EHR technology. To qualify

for incentive payments in each stage of the Meaningful Use program, healthcare providers were

required to attest each year that they used certified EHR technology and satisfied the applicable

Meaningful Use objectives and measures. Use of certified EHR technology and satisfaction of

applicable Meaningful Use objectives and measures are material to payment under the

Meaningful Use program.

17.     To obtain certification, EHR vendors (like ECW) must attest that their EHR

product satisfies the applicable certification criteria, submit to certification testing by an

accredited testing laboratory, and pass such testing.

18.     Certification testing is based on the certification criteria the vendor (i.e., ECW)

represents its software satisfies and on which it requests to be tested and certified.  The

certification body uses standardized testing protocols ("test scripts") identifying each step the

vendor will be required to take during testing.  The test scripts are available to vendors in

advance of their testing date.

19.     After obtaining certification, an EHR vendor like ECW must maintain that

certification by complying with all applicable conditions and requirements of the certification

program. Among other things, the EHR product must be able to accurately, reliably, and safely perform its certified capabilities while in use by healthcare providers.  EHR vendors must cooperate with the processes established by ONC for testing, certifying, and conducting ongoing surveillance and review of certified EHR technology.

20.    The CMS rules governing the Meaningful Use program recognize that healthcare providers rely on certification for assurance that an EHR product meets the applicable certification criteria, including that it possesses the certified capabilities that healthcare providers will need to use to achieve relevant objectives and measures, and that the software will perform in accordance with applicable certified capabilities.  The rules and regulations promulgated by HHS and its ONC under the HITECH Act express a strong public policy encouraging the development and deployment of software meeting specifications designed to protect the accuracy and integrity of patient EHRs.

**B.     ECW Failed to Satisfy the Certification Criteria and Made False
Statements in Obtaining Certification and Marketing its Software**

21.    ECW submitted an attestation form dated April 17, 2013 representing that its software satisfied the certification criteria applicable to complete EHRs and could perform those criteria and standards in the field.

22.    ECW's attestation to its certification body was false.  ECW's software did not satisfy the certification criteria for a complete EHR and could not operate in the field in compliance with the requisite certification criteria.  Because its EHR technology did not meet ONC's certification criteria, its technology also failed to satisfy the requirements for Meaningful Use incentive payments, for which the use of certified EHR technology is a prerequisite.

23.    Certification testing does not confirm that each criteria and standard is satisfied in full and under every conceivable scenario. Testing takes a snapshot of a product's capabilities

6

by ensuring it can pass certain pre-disclosed test cases.

24.     Because of the limited testing regimen, ECW passed certification testing without fully implementing all the technological changes required. ECW did not seek to ensure that the standards, implementation specifications, and criteria were truly met.

25.     ECW similarly failed to adequately review its bugs or service tickets to analyze whether software issues impacted the software's ability to meet the standards, implementation specifications, and certification criteria and perform in a reliable manner consistent with its certification.

## C.     **ECW Failed To Satisfy Required Certification Criteria**

26.     During all relevant times, ECW released software without adequate testing and overly relied on customers to identify bugs and other problems. Some bugs and problems – even some identified as "critical" or "urgent" – persisted on ECW's bug list for months and even years.  ECW lacked reliable version control, so problems addressed in one version of the software or for one particular user could reappear in later versions or remain unaddressed for other customers.

27.     In 2016, ECW began addressing these issues by implementing new policies and procedures, improving its documentation, and enhancing its training.  ECW also engaged a third-party consultant to assist it in assessing its processes and to evaluate ways in which it could enhance its product.

28.     Also in 2016, ECW issued a series of notices advising its customers of potential problems arising during particular uses of its software and when certain workflows were utilized by practitioners, including that in specific workflows, its software was failing to accurately display medical history on progress note.

29.     As discussed below, because of these and other issues with its software, ECW failed to satisfy certain certification requirements.

### 1.   ECW's Software Failed to Satisfy Audit Log Requirements

30.     Audit logs (or trails) track user activity in an EHR and provide a chronology of a patient's care. To meet certain certification criteria, EHR software must reliably and accurately record user actions in an audit log. For example, the 2014 EHR certification requirements mandate that certified products provide specific audit log capability and are based on the ASTM E2147 standard, which dictates the data that must be captured; the federal government later adopted this standard under its rule-making authority, see 45 C.F.R. § 170.299(c)(1).  These requirements help to ensure the integrity and reliability of EHR data.

31.     ECW represented to its certification body that it satisfied this audit log requirement and represented that "audit logs are also generated for all system adds/deletes/changes to patient records."  However, ECW's audit logs did not accurately record user actions, and in certain cases, the audit logs misled users as to events conducted in the course of a patient's treatment.

32.     For example, in 2009, ECW acknowledged that its audit logs incorrectly reflected that diagnostic imaging orders were *created*, when they were only *modified*.  ECW's audit logs also failed to consistently and reliably track deletions of certain medical orders.  In July 2012, ECW acknowledged that its audit logs did not accurately record diagnostic imaging orders; by June 2013, ECW knew that its access logs were not showing the names of diagnostic imaging orders or the details of what was ordered.

### 2.   ECW's Software Failed to Reliably Record Diagnostic Imaging Orders

33.     To be certified as a Complete EHR, a vendor's software must provide

computerized provider order entry, which requires users to be able to electronically order and record laboratory and radiology/imaging orders. This functionality must perform accurately and reliably to meet the certification requirement.

34.     In ECW's EHR system, diagnostic imaging orders that were not "linked" to an assessment could fail to display in certain sections of the EHR that providers may rely on to place or follow up on such orders.  Diagnostic imaging orders that were not linked to an assessment may continue to be displayed in the progress note, yet not appear in these other screens.

35.     In certain scenarios, ECW's software would represent deleted diagnostic imaging orders as current by displaying the order in the progress note even after it had been deleted.

36.     On Nov. 4, 2016, ECW notified its users in a Patient Safety Advisory as to additional issues with its laboratory and radiology/imaging functionalities.

### 3.   ECW Settles Qui Tam Action with Federal Government

37.     On May 31, 2017, the U.S. Department of Justice announced that ECW had agreed to pay $155 Million and enter into a Corporate Integrity Agreement to settle the Department of Justice's claims under the False Claims Act and Anti-Kickback Statute.  The central allegation in the Department of Justice's lawsuit was that ECW falsely obtained certification for its EHR software when it concealed that its software did not comply with the Meaningful Use program's requirements for certification.  *U.S. ex rel. Delaney v. Eclinical Works*, Case No. 2:15-CV-00095-WKS (D.Vt. May 12, 2017).  An Acting Assistant Attorney General of the Justice Department's Civil Division said at the time: "*Every day, millions of Americans rely on the accuracy of their electronic health records to record and transmit their vital health information*.  This resolution is a testament to our deep commitment to public health

and our determination to hold accountable those whose conduct results in improper payments by

the federal government."  (See Office of Public Affairs, Department of Justice, May 31, 2017

(emphasis added).)

## FACTS SPECIFIC TO PLAINTIFFS

### Stjepan Tot

38.      Prior to his death from cancer, Stjepan Tot learned about ECW's failure to

maintain the accuracy and integrity of his medical records.

39.      Mr. Tot saw his primary care physician, who used the ECW software, from

December 17, 2007 through and inclusive of January 31, 2014.  As to accuracy of his medical

records, Mr. Tot learned the following:  First, his primary care physician's Progress Notes

included inaccurate problems under the column "Active Problem List" ("Active PL").  Although

14 diagnoses were listed under the column Active PL for *every single visit* starting December 17,

2007 through September 23, 2013, they were not, in fact, diagnosed at each of those visits.  And,

in the Progress Note of the very first visit of December 17, 2017, there are 14 "active problems"

listed in the Active Problem list which were neither "active" at that time nor "problems" at that

time. Therefore, his Progress Notes were not, and are not, accurate.  These records therefore

showed false active problems.  See 45 C.F.R. Part 170; "Eligible Professional Meaningful Use

Core Measure 3 of 13/Stage 1 (2014 Definition) Last updated May 2014" (defining "Problem

List" as "a list of current and active diagnoses as well as past diagnoses relevant to the current

care of the patient").

40.      Second, ECW's Active PL did not have the ability to deactivate a problem.  For

example, in the March 7, 2012 Progress Notes, "Inflammatory Polyarthrop Nec" first appears in

the Assessments column and is also in the Active PL.  At the next visit of Sept. 12, 2012, it does

not show up under Assessments, but it nonetheless can be found in the Active PL for that date. Therefore, this problem was not deactivated.  See AHIMA Work Group, "Problem List Guidance in the EHR," *Journal of AHIMA* 82, no. 9 (Sept. 2011), at 52-58 (HER-S FM model guidelines state that "The system SHALL provide the ability to deactivate a problem" and should "not auto-populate problems to the problem list without clinician confirmation").

41.    Third, because ECW's software did not reliably and accurately record user actions (add/modify/delete notes in a Progress Note) in an Audit Log, all of ECW's patient records have been compromised.  Upon information and belief, without an audit, the problems with ECW's software make it impossible to determine whether Mr. Tot's – or anyone – else's  medical records have been altered or modified and if so, by whom.  See Walsh & Miaoulis, "Privacy and Security Audits of Electronic Health Information (2014 update)," *Journal of AHIMA* 85, no. 3 (March 2014), at 54-59.

42.    Mr. Tot did not learn about the problems with his EHRs until 2016 in connection with investigating Mr. Tot's medical malpractice claim.

### Annette Monachelli

43.     Following her death from a cerebral aneurism in February 2013, the Executor of Annette Monachelli's estate, her husband Randy Stern, learned about ECW's failure to maintain the accuracy and integrity of her medical records.

44.    Ms. Monachelli saw her primary care physician, who used the ECW software, on more than one occasion at or around Nov. 2012.  As to accuracy of her medical records, Mr. Stern learned the following:  On one of her visits, Ms. Monachelli's primary care physician ordered a magnetic resonance angiogram ("MRA") for her.  Notwithstanding that order, no such procedure was performed.  According to her medical records, a Diagnostic Image ("DI") entry

was available inside the Progress Note, and it indicated that the primary care physician had

placed the order.  But the entry was not in the DI tab, indicating that the ECW software either

dropped the order or failed to populate the appropriate screens through which orders are

communicated and tracked.  Ms. Monachelli, because of this ECW software glitch, was not told

to obtain an MRA and she did not obtain an MRA.  Had she obtained an MRA when it was

ordered, the unruptured brain aneurysm would have been diagnosed early enough so that it

would not have had time to rupture, and doctors would have been able to perform an

endovascular clipping or flow diverter and she would not have died from its rupture.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs and all members of the class (as defined below) had a reasonable

expectation that their EHRs be reliable and accurate.  Because of ECW's failure to comply with

the above federal rules and requirements as well as certain established industry standards, the

accuracy and integrity of Plaintiffs' medical information like all members of the class have been

compromised.

46.     ECW violated the following industry standards, among others:  First, ASTM

International's Standard Practice for Content and Structure of the Electronic Health Record states

that the problem list should contain, as per § 7.9 therein: "All past and existing diagnosis,

pathophysiological states, potentially abnormal physical signs and laboratory findings,

disabilities, and unusual conditions."

47.     Second, the International Organization for Standardization designated as a

standard, Health Level Seven International's Electronic Health Record System Functional Model

(EHR-S FM), which provides additional guidance for EHR content and outlines the following

functional requirements related to problem lists: "(1) The system SHALL [capitalization in the

original] capture, display and report all active problems associated with the patient; (2) The system SHALL [same] provide the ability to capture the onset date of a problem."  ECW's Problem list inaccurately displays problems not active on that date; and, ECW's Problem list does not capture the onset date of a problem.  ECW's version affected Mr. Tot's medical records as well as all putative plaintiffs whose health care providers used that version.

48.     Third, as for ECW's breach of the Stage 1 Meaningful Use incentive program's final rule, the following was a requirement for an EHR system: "Provide clinical summaries, including problems to patients for each office visit."  (See American Recovery and Reinvestment Act of 2009.)

49.     Fourth, as for ECW's breach, reporting requirement for the problem list for the Stage 1 Meaningful Use requirements state the provider must "maintain an up to date problem list of current and active diagnoses based on ICD-9-CM or SNOMED-CT."

50.     Fifth, 45 CFR 170.314 requires certified EHRs to "enable a user to electronically record, change, and access" orders for "diagnostic imaging," which ECW's EHRs failed to do in the case of Ms. Monachelli.

51.      Plaintiffs bring this action, pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), on behalf of a class of patients (the "Class"), consisting of all persons residing in the U.S. whose healthcare providers used ECW software to record and store their medical records from Jan. 17, 2007 to May 31, 2017 (the "Class Period").

52.      Excluded from the Class are ECW and its affiliates, parents, subsidiaries, current or former employees, officers, directors, and agents at all relevant times.  Also excluded are governmental entities and any judge to whom this case is assigned, their judicial staff, and their immediate families.

53.     Plaintiffs reserve the right to amend the Class definition and to add sub-classes as appropriate if discovery and further investigation reveal that the Class should be expanded, otherwise divided into sub-classes, or modified in anyway.

54.     Plaintiffs satisfy the numerosity, commonality, typicality, and adequacy prerequisites for suing as a represented party pursuant to Fed. R. Civ. P. 23.

55.     **NUMEROSITY.**  Joinder of all members of the Class is impractical because approximately 130,000 physicians nationwide used ECW's software.  Accordingly, millions of U.S. residents whose medical records were recorded and stored by ECW during the Class Period will be members of the Class.

56.     **COMMONALITY.**  There are questions of law and fact common to the Class and these questions predominate over any questions affecting only individual class members, including:

A.     Whether ECW owed a fiduciary duty to the Class;

B.     Whether ECW breached any such fiduciary duty to the Class;

C.     Whether ECW committed a constructive fraud upon the Class by failing to disclose to them that their EHRs have been compromised;

D.     Whether ECW intentionally, recklessly or by way of gross negligence or negligently developed, marketed and sold, or deployed as vendor software that did not maintain the accuracy and reliability of the EHRs of the Class;

E.     Whether ECW expressly warranted its software to the Class;

F.     Whether ECW breached any such express warranty;

G.     Whether ECW impliedly warranted its software to the Class; and

H.     Whether ECW breached any such express warranty.

14

57.     **TYPICALITY.**   Plaintiffs' claim is typical of the claims of the proposed Class members.  Plaintiffs and the members of the Class sustained the same or substantially the same injury arising out of the same wrongful conduct by ECW and their legal claims arise from the same ECW practices, as alleged herein.

58.     **ADEQUACY.**  Plaintiffs will fairly and adequately pursue the interests of the Class and protect those interests.  Plaintiffs have no interest antagonistic to the members of the Class.  Plaintiffs have retained counsel who has experience in complex and class action litigation.

59.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class.  Neither Plaintiffs nor their counsel has conflicts with the interests of the Class.

60.     Plaintiffs additionally satisfy the requirements of maintaining a class under Fed. R. Civ. P. 23(b)(1), 23(b)(2), and 23(b)(3).  A class action is superior to all other means available to adjudicate this controversy in a fair and efficient manner.  Absent a class action, the members of the Class would likely find the cost of litigating their claims prohibitively high and therefore would have no effective remedy at law.  Additionally, prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

## CLAIMS FOR RELIEF

## COUNT I
### Breach of Fiduciary Duty/Constructive Fraud

61.     Plaintiffs incorporate by reference the allegations alleged in paragraphs 1 through 60, above.

62. ECW is the leading cloud-based EHR vendor of software designed to hold patients' healthcare records for the Class. Upon information and belief, up to 90% of healthcare providers choose to store their EHRs through ECW. ECW generates, stores and maintains the EHRs for millions of patients. Those EHRs are designed to follow the patients from one healthcare provider to the next and may also be transferred to other entities that require medical information about members Class.

63. EHRs by their nature contain sensitive information about patients. EHRs also contain information crucial to the effective healthcare of members of the Class. Members of the Class have a reasonable expectation that their EHRs will be generated and maintained in such a way that the accuracy and integrity of those records will not be compromised. While ECW maintains a Patient Portal, allowing patients to access their EHRs, patients have little or no effective ability to ensure that ECW maintained the accuracy and integrity of their EHRs. They are therefore completely dependent on ECW to insure the accuracy and integrity of their EHRs.

64. Because of these special circumstances, where the Class had no choice but to place their trust in ECW to generate and maintain their EHRs in a manner to ensure the accuracy and integrity of those records, a fiduciary relationship arose, and ECW owes a duty to the Class as a matter of public policy, to ensure the accuracy and integrity of EHR. Accordingly, ECW is a fiduciary acting for the benefit of the Class.

65. ECW breached its fiduciary duty to Plaintiffs and other members of the Class by failing to keep those records in a manner such that the accuracy and integrity of those records would be maintained as described above. In addition, ECW breached its fiduciary duty to Plaintiffs and other members of the Class, and therefore committed a constructive fraud upon them, by failing to disclose to them via its Patient Portal or otherwise that its software

16

compromised their healthcare records and posed a serious risk to their safety.

66.     Because of the above, Plaintiffs and the Class have been damaged in that no member of the Class can rely on the accuracy and integrity of their healthcare records maintained on ECW software during the Class Period.

67.     Plaintiffs and the Class have suffered and will continue to suffer damages in an amount that they have not presently calculated with complete certainty, a measure of such damage to include the cost of investigation and remediation of compromised healthcare records.

## COUNT II
### Negligence

68.     Plaintiffs incorporate by reference the allegations alleged in paragraphs 1 through 67, above.

69.     ECW owed Plaintiffs and other members of the Class a duty to hold their healthcare records in a manner that maintained the accuracy and integrity of those records.

70.     In failing to keep those records in such a manner as previously alleged, ECW acted intentionally, recklessly or by way of gross negligence or negligently.

71.     As a result of the above, Plaintiffs and other members of the Class have been damaged in that no member of the Class can rely on the accuracy or integrity of their healthcare records maintained on ECW software during the Class Period.

72.     Plaintiffs and the Class suffered and will continue to suffer damages in an amount that they have not presently calculated with complete certainty, a measure of such damage to include the cost of investigation and remediation of compromised healthcare records.

## COUNT III
### Breach of Express Warranty

73.     Plaintiffs incorporate by reference the allegations alleged in paragraphs 1 through

72, above.

74.     ECW represented and warranted to the healthcare providers for Plaintiffs and the Class that its products would meet the "Meaningful Use" certification criteria described above and that ECW would update its software as necessary to ensure that it complied with the most current federal or state requirements.

75.     ECW breached these express warranties because their software did not meet the "Meaningful Use" certification criteria and were not updated to comply with state and federal law as alleged herein.

76.     Healthcare providers for Plaintiffs and the Class served as Plaintiffs' and the Class's agents for purposes of providing them medical services and Plaintiffs and the Class, being patients, were persons whom ECW might reasonably have expected to be affected by the patient record-keeping and management software it manufactured and sold.

77.     Plaintiffs and the Class have been damaged because of ECW's breach of express warranty in that no member of the Class can rely on the accuracy and integrity of their medical records maintained on ECW software during the Class Period.

78.     Plaintiffs and the Class suffered and will continue to suffer damages in an amount that they have not presently calculated with complete certainty, a measure of such damage to include the cost of investigation, audit and remediation of compromised healthcare records.

## COUNT V

### Breach of Implied Warranty (Merchantability and Fitness for Intended Purpose)

79.     Plaintiffs incorporate by reference the allegations alleged in paragraphs 1 through 78, above.

80.     Plaintiffs' and the Class's healthcare professionals bought ECW's medical record-

keeping and management software which was manufactured and sold by ECW.

81.    In the provision of medical services, Plaintiffs and the Class entrusted to their physicians, hospitals, and other healthcare providers the management of their healthcare, including the management of their medical information, as these healthcare providers have superior knowledge and training in these areas than Plaintiffs and the Class.  Accordingly, Medical providers for Plaintiffs and the Class served as Plaintiffs' and the Class's agents for purposes of providing them medical services and Plaintiffs and the Class, being patients, were persons whom ECW might reasonably have expected to be affected by the patient medical record-keeping and management software it manufactured and sold.

82.    ECW's patient medical record-keeping and management software was not of the same quality as those generally acceptable in the medical profession because, as alleged above, their products did not meet the "Meaningful Use" certification criteria and were not updated to comply with state and federal law as alleged herein.

83.    ECW's patient medical record-keeping and management software was not fit for the ordinary purpose for which it was used, i.e. keeping and managing patient medical records.

84.    Plaintiffs and the Class have been damaged as a result of ECW's breach of implied warranty of merchantability and fitness for intended purpose in that no member of the Class can rely on the accuracy and integrity of their medical records maintained on ECW software during the Class Period.

85.    Plaintiffs and the Class suffered and will continue to suffer damages in an amount that they have not presently calculated with complete certainty, a measure of such damage to include the cost of investigation, audit and remediation of compromised healthcare records.

**COUNT VI**

**Violation of M.G.L. c. 93A, §§ 2 and 9**

19

86.     Plaintiffs incorporate by reference the allegations alleged in paragraphs 1 through 85 above.

87.     ECW was engaged in trade or commerce at all relevant times.

88.     ECW by participating in misconduct as outlined above, have committed unfair or deceptive acts and practices in violation of M.G.L. c. 93A, § 2

89.     ECW's actions were willful or knowing.

90.     On July 31, 2018, the Plaintiffs sent ECW a demand letter pursuant to M.G.L. c. 93A, § 9.

91.     On August 28, 2018, ECW responded to the demand letter.

92.     ECW's response did not include a reasonable offer of settlement.

93.     Because of their unfair or deceptive acts and practices, the Plaintiffs have been injured in that no member of the Class can rely on the accuracy and integrity of their medical records maintained on ECW software during the Class Period.

94.     Plaintiffs and the Class suffered and will continue to suffer damages in an amount that they have not presently calculated with complete certainty, a measure of such damage to include the cost of investigation, audit and remediation of compromised healthcare records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief and judgment against ECW as follows:

A.     For an order certifying the Class, appointing Plaintiffs and their counsel to

represent the Class, and for notice to the Class to be paid by ECW;

B.      Awarding declaratory, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

C.      For actual or nominal damages suffered by Plaintiffs and the Class to include, among other things, the cost of investigation, audit and remediation of the Class's healthcare records;

D.      For punitive damages to the Plaintiffs and class members;

E.      For Plaintiffs' reasonable attorneys' fees, if and as permitted by law;

F.      For Plaintiffs' costs incurred;

G.      For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

H.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: Boston, MA
October 26, 2018

Respectfully submitted,

**PLAINTIFFS AND THE CLASS**


By: _/s/ Patrick M. Groulx_____
Patrick M. Groulx

ISENBERG GROULX, LLC
Patrick M Groulx
Email: patrick@i-gllc.com
368 West Broadway, Suite 2
Boston, MA 02127
Telephone: (857) 880-7889
Fax: (617) 249-1981
BBO No.: 673394

DIEFENBACH, PLLC
Gordon Price Diefenbach (*pro hac vice*)
Email: gordon@diefenbachlaw.com
888 Seventh Avenue, 6th Floor
New York, NY 10106
Telephone: (212) 981-2233
Fax: (646) 867-1150

LAW OFFICES OF
STEVEN E. ARMSTRONG, PLLC
Steven E. Armstrong (*pro hac vice* to be submitted)
Email: sarmstrong@armstrongpllc.com
26 Broadway, 17th Floor
New York, NY 10004
Tel: (646) 708-3658
Fax: (212) 344-7285

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
David M. Given (*pro hac vice*)
Email: dmg@phillaw.com
39 Mesa Street, Suite 201
San Francisco, CA 94129
Tel: (415) 398-0900
Fax: (415) 398-0911