UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KRISTINA TOT, as Administratrix of the Estate   :
of STJEPAN TOT, and RANDY STERN, as   :
Executor of the Estate of ANNETTE   :
MONACHELLI, on behalf of themselves and all   :
other similarly situated,   :
  :    Civil Action
        Plaintiffs,   :    No. 18-11658-RGS
  :
   v.   :
  :
ECLINICALWORKS, LLC,   :
        Defendant.   

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT ECLINICALWORKS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED COMPLAINT

James R. Carroll
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com

Jessica D. Miller
Geoffrey M. Wyatt
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
jessica.miller@skadden.com
geoffrey.wyatt@skadden.com

Counsel for Defendant
Dated: November 29, 2018       eClinicalWorks, LLC

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................................2

ARGUMENT .......................................................................................................................3

I.     PLAINTIFFS' CLAIMS UNDER CHAPTER 93A CANNOT BE ASSERTED
ON BEHALF OF A NATIONWIDE CLASS ....................................................................4

II.    MATERIAL VARIATIONS IN STATE LAW MAKE IT IMPOSSIBLE TO
CERTIFY A NATIONWIDE CLASS BASED ON PLAINTIFFS' COMMON
LAW CLAIMS ............................................................................................................6

     A.    The Putative Class Members' Claims Are Governed By The Laws Of All
50 States And The District Of Columbia....................................................6

     B.    The Applicable States' Laws Vary In Material Ways, Rendering A
Nationwide Class Patently Uncertifiable ................................................12

CONCLUSION...................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### FEDERAL CASES

*In re American Medical Systems, Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ........................................................................ 18

*Asymmetrx Medical, Inc. v. McKeon*,
   932 F. Supp. 2d 232 (D. Mass. 2013) ............................................................ 7

*Burleigh v. Alfa Laval, Inc.*,
   313 F. Supp. 3d 343 (D. Mass. 2018) ................................................ 7, 8, 9, 10

*Buzadzhi v. Bexco Enterprises, Inc.*,
   No. 10-CV-247-GKF-PJC, 2011 WL 43086 (N.D. Okla. Jan. 4, 2011).......................... 15

*Camey v. Force Factor, LLC*,
   No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016)...................... passim

*Casa Orlando Apartments, Ltd. v. Federal National Mortgage Association*,
   624 F.3d 185 (5th Cir. 2010) ........................................................................ 17

*Cole v. General Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) .................................................................. 13, 15

*Coleman v. Boston Scientific Corp.*,
   No. 1:10-cv-01968-OWW-SKO, 2011 U.S. Dist. LEXIS 96315
   (E.D. Cal. Aug. 29, 2011) .............................................................................. 14

*Darisse v. Nest Labs, Inc.*,
   No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ................ 13, 15

*Doll v. Chicago Title Insurance Co.*,
   246 F.R.D. 683 (D. Kan. 2007)...................................................................... 17

*Dumont Telephone Co. v. Power & Telephone Supply Co.*,
   962 F. Supp. 2d 1064 (N.D. Iowa 2013)........................................................ 11

*F. McConnell & Sons, Inc. v. Target Data Systems, Inc.*,
   84 F. Supp. 2d 961 (N.D. Ind. 1999) ............................................................ 11

*Faherty v. CVS Pharmacy, Inc.*,
   No. 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011).................................... 5, 8

*In re Ford Motor Co. Ignition Switch Products Liability Litigation*,
    194 F.R.D. 484 (D.N.J. 2000) ................................................................................. 13, 16

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................................ 3

*In re Genetically Modified Rice Litigation*,
    No. 4:06MD1811 CDP, 2009 WL 4801399 (E.D. Mo. Dec. 9, 2009) ............................ 20

*Geshke v. Crocs, Inc.*,
    889 F. Supp. 2d 253 (D. Mass. 2012) ......................................................................... 7, 8

*Hale v. Enerco Group, Inc.*,
    288 F.R.D. 139 (N.D. Ohio 2012) ................................................................................ 18

*Harrigan v. New England Dragway, Inc.*,
    No. 13-10132-JCB, 2014 WL 12589625 (D. Mass. Jan. 2, 2014) .................................. 7

*Hill v. Hoover Co.*,
    899 F. Supp. 2d 1259 (N.D. Fla. 2012) ....................................................................... 14

*Jeld-Wen, Inc. v. Nebula Glass International, Inc.*,
    No. 05-60860-CIV, 2007 WL 5960207 (S.D. Fla. May 15, 2007) ................................ 14

*Klaxon Co. v. Stentor Electric Manufaturing Co.*,
    313 U.S. 487 (1941) ...................................................................................................... 4

*Lutz Farms v. Asgrow Seed Co.*,
    948 F.2d 638 (10th Cir. 1991) ..................................................................................... 14

*Manning v. Boston Medical Center Corp.*,
    725 F.3d 34 (1st Cir. 2013) ............................................................................................ 3

*Marshall v. H & R Block Tax Services Inc.*,
    270 F.R.D. 400 (S.D. Ill. 2010) ................................................................................... 17

*In re Masonite Corp. Hardboard Siding Products Liability Litigation*,
    170 F.R.D. 417 (E.D. La. 1997) ................................................................................... 19

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ........................................................................... 15

*Monteferrante v. Williams-Sonoma, Inc.*,
    241 F. Supp. 3d 264 (D. Mass. 2017) ............................................................................ 3

*Munn v. Pfizer Hospital Products Group, Inc.*,
    750 F. Supp. 244 (W.D. Ky. 1990) .............................................................................. 14

*In re NeuroGrafix ('360) Patent Litigation*,
   5 F. Supp. 3d 146 (D. Mass. 2014) ................................................................ 11

*Oscar v. BMW of North America, LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011) .................................................................... 15

*Peterson v. H & R Block Tax Services, Inc.*,
   971 F. Supp. 1204 (N.D. Ill. 1997) ................................................................ 17

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ........................................................................... 4

*Powers v. Lazy Days RV Center, Inc.*,
   No. 8:05-CV-1542T17EAJ, 2006 WL 373011 (M.D. Fla. Feb. 16, 2006) ...................... 16

*Reedy v. Phillips 66 Co.*,
   No. H-17-2914, 2018 WL 1413087 (S.D. Tex. Mar. 20, 2018) ................................. 4, 13

*In re RFC & ResCap Liquidating Trust Litigation*,
   No. 13-cv-3451 (SRN/JJK/HB) et al., 2015 WL 3756476 (D. Minn. June 16, 2015) ..... 14

*In re Rhone-Poulenc Rorer Inc.*,
   51 F.3d 1293 (7th Cir. 1995) .......................................................................... 18

*Rikos v. Procter & Gamble Co.*,
   No. 1:11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ................................ 13

*Rohlfing v. Manor Care, Inc.*,
   172 F.R.D. 330 (N.D. Ill. 1997) ...................................................................... 17

*Rothbaum v. Samsung Telecommunications America, LLC*,
   52 F. Supp. 3d 185 (D. Mass. 2014) ................................................................ 16

*Rottner v. AVG Technologies USA, Inc.*,
   943 F. Supp. 2d 222 (D. Mass. 2013) .......................................................... 7, 11

*Route v. Mead Johnson Nutrition Co.*,
   No. CV 12-7350-GW(JEMx), 2013 WL 658251 (C.D. Cal. Feb. 21, 2013).................... 4

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................. 14

*Sheehan v. North American Marketing Corp.*,
   C.A. No. 05-364 S, 2008 WL 896152 (D.R.I. Apr. 2, 2008)................................... 14

*Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015) ................................................................... 13

*Teggerdine v. Speedway, LLC*,
   No. 8:16-cv-03280-T-27TGW, 2018 U.S. Dist. LEXIS 91043
   (M.D. Fla. May 31, 2018) ................................................................................................ 19

*Walters v. Vitamin Shoppe Industries, Inc.*,
   No. 3:14-cv-1173-PK, 2018 WL 2424132 (D. Or. May 8, 2018) ..................................... 4

*Watkins v. Omni Life Science, Inc.*,
   692 F. Supp. 2d 170 (D. Mass. 2010) .............................................................................. 9

*In re Yasmin & Yaz (Drospirenone) Marketing*,
   275 F.R.D. 270 (S.D. Ill. 2011) ....................................................................................... 4

## STATE CASES

*A.G. Edwards & Sons, Inc. v. Drew*,
   978 S.W.2d 386 (Mo. Ct. App. 1998) ............................................................................. 18

*Adams v. Wacaster Oil Co.*,
   98 S.W.3d 832 (Ark. Ct. App. 2003) .............................................................................. 16

*Affiliated FM Insurance Co. v. LTK Consulting Services, Inc.*,
   243 P.3d 521 (Wash. 2010) ............................................................................................. 20

*Arons v. Rite Aid Corp.*,
   No. BER-L-4641-03, 2005 WL 975462 (N.J. Super. Ct. Law Div. Mar. 23, 2005) ........ 14

*Barré v. Gulf Shores Turf Supply, Inc.*,
   547 So. 2d 503 (Ala. 1989) ............................................................................................. 14

*Board of Directors of Bay Point Condominium Assocation v. RML Corp.*,
   57 Va. Cir. 295 (2002) .................................................................................................... 17

*Clarendon National Insurance Co. v. Arbella Mutual Insurance Co.*,
   803 N.E.2d 750 (Mass. App. Ct. 2004) .......................................................................... 11

*Cosme v. Whitin Machine Works, Inc.*,
   632 N.E.2d 832 (Mass. 1994) ........................................................................................... 7

*Daughtrey v. Ashe*,
   413 S.E.2d 336 (Va. 1992) .............................................................................................. 14

*Farm Bureau Insurance Co. v. Case Corp.*,
   878 S.W.2d 741 (Ark. 1994) ........................................................................................... 20

*Felley v. Singleton*,
   705 N.E.2d 930 (Ill. App. Ct. 1999) .............................................................................. 14

*Flory v. Silvercrest Industries, Inc.*,
633 P.2d 383 (Ariz. 1981)...........................................................................14

*Fortune View Condominium Association v. Fortune Star Development Co.*,
90 P.3d 1062 (Wash. 2004)..........................................................................14

*Gracey v. Eaker*,
837 So. 2d 348 (Fla. 2002)...........................................................................18

*Harlow v. Voyager Communications V*,
501 S.E.2d 72 (N.C. 1998)...........................................................................20

*Hudson v. Gaines*,
403 S.E.2d 852 (Ga. Ct. App. 1991)............................................................17

*Humphries v. Eighth Judicial District Court*,
312 P.3d 484 (Nev. 2013).............................................................................20

*Hyundai Motor America, Inc. v. Goodin*,
822 N.E.2d 947 (Ind. 2005) .........................................................................16

*Keaton v. A.B.C. Drug Co.*,
467 S.E.2d 558 (Ga. 1996)...........................................................................16

*Maybank v. S. S. Kresge Co.*,
273 S.E.2d 681 (N.C. 1981)..........................................................................15

*McKelvey v. Pierce*,
800 A.2d 840 (N.J. 2002)..............................................................................18

*Mocek v. Alfa Leisure, Inc.*,
7 Cal. Rptr. 3d 546 (Ct. App. 2003) ............................................................16

*Morrow v. New Moon Homes, Inc.*,
548 P.2d 279 (Alaska 1976)..........................................................................15

*Nacci v. Volkswagen of America, Inc.*,
325 A.2d 617 (Del. Super. Ct. 1974) ...........................................................16

*Ogburn-Sisneros v. Fresenius Medical Care Holdings, Inc.*,
No. 2013-05050, 33 Mass. L. Rptr. 59 (Super. Ct. Oct. 19, 2015)............8, 10

*Panda Capital Corp. v. Kopo International, Inc.*,
662 N.Y.S.2d 584 (App. Div. 1997) ............................................................17

*Pergament v. Roach*,
838 N.Y.S.2d 591 (App. Div. 2007) ............................................................18

*Pulte Home Corp. v. Parex, Inc.*,
　923 A.2d 971 (Md. Ct. Spec. App. 2007) ........................................................ 14

*Renaissance Learning, Inc. v. Omron Corp.*,
　757 N.W.2d 850 (table), 2008 WL 3389702 (Wis. Ct. App. 2008) ................................ 16

*Schreib v. Walt Disney Co.*,
　No. 1-05-0094, 2006 WL 573008 (Ill. App. Ct. Feb. 1, 2006) ........................................ 16

*Shows v. Man Engines & Components, Inc.*,
　364 S.W.3d 348 (Tex. App. 2012) ................................................................ 16

*Staab v. Diocese of St. Cloud*,
　813 N.W.2d 68 (Minn. 2012) ........................................................................ 20

*Swartz v. General Motors Corp.*,
　378 N.E.2d 61 (Mass. 1978) ........................................................................ 17

*Thomas v. Amway Corp.*,
　488 A.2d 716 (R.I. 1985) ............................................................................ 14

*Torres v. Northwest Engineering Co.*,
　949 P.2d 1004 (Haw. Ct. App. 1997) ........................................................ 14

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
　110 S.W.3d 194 (Tex. App. 2003) ............................................................ 16

*Van Brode Group, Inc. v. Bowditch & Dewey*,
　633 N.E.2d 424 (Mass. App. Ct. 1994) ...................................................... 18

*Western Equipment Co. v. Sheridan Iron Works, Inc.*,
　605 P.2d 806 (Wyo. 1980) ........................................................................ 15

*Wilson v. Style Crest Products, Inc.*,
　627 S.E.2d 733 (S.C. 2006) ........................................................................ 16

*Windham at Carmel Mountain Ranch Association v. Superior Court*,
　109 Cal. App. 4th 1162 (2003) .................................................................. 16

*Woodward School for Girls, Inc. v. City of Quincy*,
　13 N.E.3d 579 (Mass. 2014) ...................................................................... 7

## STATE STATUTES

Alaska Stat. § 09.17.080 ...................................................................................... 20

Cal. Com. Code § 2314(2) .................................................................................... 16

Mass. Gen. Laws ch. 106, § 2-318................................................................................................ 17

42 Pa. Cons. Stat. § 7102(a.2).................................................................................................... 20

S.C. Code Ann. § 36-2-318......................................................................................................... 14

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 6............................................................................ 10

Restatement (Second) of Conflict of Laws § 145(2) .................................................................... 7

Restatement (Second) of Conflict of Laws § 148(2) .................................................................... 5

Restatement (Second) of Conflict of Laws § 188(2) .................................................................. 10

Plaintiffs seek to represent a proposed nationwide class of individuals across the country whose physicians used eClinicalWorks, LLC's ("eCW's") Electronic Health Records ("EHR") system over the course of a decade.  Plaintiffs originally asserted claims for breach of fiduciary duty/constructive fraud, negligence, breach of express warranty and breach of implied warranty. After eCW moved to dismiss and to strike plaintiffs' nationwide class allegations, explaining that variations in the state laws governing those claims rendered a nationwide class uncertifiable, plaintiffs filed an amended complaint adding a new claim – violation of Massachusetts General Laws, chapter 93A.  However, courts in this District have repeatedly made clear that chapter 93A claims can only be brought by Massachusetts consumers, precluding such claims from being asserted on behalf of a nationwide class.  As such, plaintiffs' amendment only serves to introduce another cause of action that cannot support nationwide class certification.

As set forth in eCW's motion to dismiss plaintiffs' First Amended Complaint ("FAC"), filed separately, all of plaintiffs' causes of action fail on the pleadings and should be dismissed. To the extent any of plaintiffs' claims survive a motion to dismiss, however, the Court should strike plaintiffs' nationwide class allegations.

*First*, federal courts have repeatedly rejected multi-state class proposals under Chapter 93A because the Massachusetts consumer protection statute cannot be applied to the claims of out-of-state consumers, which are subject to the consumer protection laws of their own home states.  In fact, Judge Zobel has granted a motion to strike nationwide class allegations involving Chapter 93A for precisely this reason, noting that there was "no reason to postpone [a] decision" on the viability of the class because it was clear from the pleadings that neither the named plaintiffs, who lived outside Massachusetts, nor proposed class members residing outside the state, could bring suit under the Massachusetts consumer protection law.  *Camey v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *2 (D. Mass. May 16, 2016).

*Second*, the applicable choice-of-law rules similarly provide that the proposed class members' common law claims for breach of warranty, negligence and fraud will be governed by the law of the state in which they received medical treatment and where their medical providers used the EHR system to store their medical information.  And because state laws vary substantially with respect to the causes of action at issue, it would be impossible to manageably resolve the claims of the proposed class members in one nationwide class trial.

Accordingly, to the extent the Court declines to dismiss plaintiffs' claims, it should, at a minimum, strike their nationwide class allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).

## BACKGROUND

Plaintiffs Kristina Tot and Randy Stern commenced this putative nationwide class action against eCW, a privately-held software company, on August 6, 2018.  Plaintiff Tot is the Administratrix of the Estate of Stjepan Tot, who was a citizen of New York at the time of his death.  (FAC ¶ 11.)  Plaintiff Stern is the Administrator of the Estate of Annette Monachelli, who was a citizen of the State of Vermont.  (*Id.*)  Plaintiffs' original complaint asserted claims for breach of fiduciary duty/constructive fraud, negligence, breach of express warranty and breach of implied warranty (*id.* Counts I, II, III, V) on behalf of a proposed nationwide class, based on the allegation that the eCW "software used by . . . patients' healthcare providers . . . failed to maintain the accuracy and integrity of patients' EHRs."  (*Id.* ¶ 2.)

eCW moved to dismiss the original complaint and to strike the nationwide class allegations therein on September 28, 2018.  (ECF Nos. 15 and 17.)  In response, plaintiffs filed the FAC on October 26, 2018.  The FAC is largely identical to plaintiffs' original complaint, but adds a claim under Massachusetts General Law chapter 93A.  (*See* FAC ¶¶ 86-94.)  Plaintiffs seek certification of a class that encompasses "all persons residing in the U.S. whose healthcare

2

providers used [e]CW software to record and store their medical records from Jan. 17, 2007 to

May 31, 2017." (*Id.* ¶ 51.)  Plaintiffs allege that eCW's software is used by more than 130,000

physicians across the country and that millions of U.S. residents had medical records recorded

and stored by eCW during the class period.  (*Id.* ¶¶ 9, 12.)

## ARGUMENT

Where it is clear from the face of a complaint that class claims are not viable, the better

course is to forgo class certification discovery and simply strike the class action allegations.  *See*

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain

enough from the pleadings" to show that a class should not be certified); *Camey*, 2016 WL

10998440, at *2 (courts should not be "deter[red] . . . from 'delet[ing] the complaint's class

allegations' when 'it is obvious from the pleadings that the proceeding cannot possibly move

forward on a classwide basis'") (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st

Cir. 2013)).  Indeed, Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure authorizes courts

to "eliminate allegations about representation of absent persons" where it is "clear" that the

plaintiffs cannot succeed on those claims.  *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp.

3d 264, 268-69 (D. Mass. 2017) (citation omitted) (granting motion to strike class allegations).

Consistent with this principle, Judge Zobel struck nationwide class allegations in *Camey,*

a nutritional supplement case involving claims under Chapter 93A, breach of warranty and unjust

enrichment.  2016 WL 10998440, at *2.  As Judge Zobel explained, "[d]eferring" consideration

of the validity of plaintiffs' class claims was inappropriate "for two reasons."  *Id.*  First, the

issues raised by the defendant's motion to strike – which argued that the laws applicable to the

proposed class members' claims would vary – were "not fact-intensive," and the information

needed to evaluate them was "all in the complaint."  *Id.*  Specifically, the complaint provided

that the "named plaintiffs reside in California [and] putative class members reside in every

3

state," whereas the defendant had headquarters in Massachusetts and other states. *Id.* "From these facts, the court" could easily resolve "whether Massachusetts law can apply to a nationwide class" and whether "common questions of law would predominate." *Id.* Second, the court noted that "numerous courts have evaluated the types of [multistate] classes proposed by plaintiffs and have rejected them nearly unanimously." *Id.* Given these "sufficient facts and well developed law," there was "no reason to postpone decision on" rejecting the proposed class as a matter of law. *Id.*[1]

This Court should reach the same conclusion both with respect to plaintiffs' Chapter 93A claims and their originally pled common law claims.

## I.   PLAINTIFFS' CLAIMS UNDER CHAPTER 93A CANNOT BE ASSERTED ON BEHALF OF A NATIONWIDE CLASS

A federal court sitting in diversity must apply the choice-of-law rules of the forum state.

*See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Massachusetts applies the test from Section 148 of the Restatement (Second) of Conflict of Laws to misrepresentation claims brought under chapter 93A. *See Camey*, 2016 WL

---

[1]      Many other decisions are in accord. *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (affirming district court's ruling striking proposed nationwide consumer fraud class; a class action "is rarely, if ever, appropriate where each plaintiff's claim will be governed by the law of his [or her] own State"); *Reedy v. Phillips 66 Co.*, No. H-17-2914, 2018 WL 1413087, at *12-13 (S.D. Tex. Mar. 20, 2018) ("district courts may evaluate the sufficiency of class allegations at the pleading stage," and the "burden of applying the products liability and warranty laws of each class member's state defeats predominance"); *Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14-cv-1173-PK, 2018 WL 2424132, at *4 (D. Or. May 8, 2018), *report and recommendation adopted*, No. 3:14-CV-01173-PK, 2018 WL 2418544 (D. Or. May 29, 2018) (striking nationwide class claims due to the need to apply multiple states' laws, a conclusion that would not be altered by discovery); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 275-76 (S.D. Ill. 2011) (striking nationwide class allegations where "the merits of the putative class members' claims would be governed by the substantive law of each class member's home state" such that individual issues of law would predominate; "the [c]ourt cannot ignore differences in state law in order to facilitate class treatment"); *Route v. Mead Johnson Nutrition Co.*, No. CV 12-7350-GW(JEMx), 2013 WL 658251, at *7-9 (C.D. Cal. Feb. 21, 2013) (similar).

10998440, at *3.  Under Section 148, the factors to be considered in determining which state has a "more significant relationship" to an alleged misrepresentation include: "[1] the place, or places, where the plaintiff acted in reliance upon the defendant's representations, [2] the place where the plaintiff received the representations, [3] the place where the defendant made the representations, [4] the domicile, residence, nationality, place of incorporation and place of business of the parties, [5] the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and [6] the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."  Restatement (Second) of Conflict of Laws § 148(2).  These factors preclude application of Chapter 93A to non-Massachusetts plaintiffs because the choice-of-law inquiry focuses on where a plaintiff relied on or was otherwise affected by a defendant's alleged misrepresentation.  *Camey*, 2016 WL 10998440, at *3.  Indeed, as Judge Zobel noted in *Camey,* "[t]hese principles have generated an ***unbroken string of opinions in which the federal courts have refused to allow multi-state classes to pursue claims under the Massachusetts Consumer Protection Act***."  *Id*. (emphasis added).

        This Court reached the same conclusion in *Faherty v. CVS Pharmacy, Inc.*, No. 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011) (Stearns, J.), declining to certify a nationwide consumer fraud class made up of all purchasers of allegedly ineffective immune system supplements.  *Id.* at *4-5.  As the Court explained, a state's "interest in applying its own laws to protect [its] consumers would outweigh any secondary interest" a defendant's home state "might have in policing the conduct of [its] corporations in other states."  *Id*. at *5 (citation omitted).

        The same is true here.  As the FAC makes clear, the named plaintiffs represent the estates of individuals who lived – and received medical treatment by medical professionals who used eCW's software – outside of the state of Massachusetts.  (FAC ¶ 11.)  Nevertheless, they seek to

assert claims under Chapter 93A both on their own behalf and on behalf of "all persons residing in the U.S. whose healthcare providers used [e]CW software to record and store their medical records." (*Id.* ¶ 51.)  Notably, plaintiffs do not allege that eCW made any misrepresentation to them or to the proposed class members.  Instead, plaintiffs' claims arise from eCW's "marketing and selling [of] its EHR software ***to healthcare providers***." (*Id.* ¶ 5 (emphasis added).)  Thus, the alleged misrepresentations or deceptive conduct at issue would have been received and relied upon by the proposed class members' medical providers in the states where the proposed class members lived/received treatment.  Further, according to plaintiffs' own allegations, the proposed class members were "injured" by eCW's allegedly deceptive conduct because "incorrect medical information" was displayed in their patient files, undermining their ability to "rely on the accuracy and integrity of their healthcare records." (*Id.* ¶¶ 8, 66, 71, 77, 84, 93.) These records also would have been maintained by their physicians in the states where the patients lived and were treated.  Thus, based on plaintiffs' own allegations, the allegedly misleading conduct in this case would have affected the proposed class members – if at all – in their home states.  The *Camey* and *Faherty* decisions make clear that, in these circumstances, the consumer protection laws of all 50 states and the District of Columbia would govern the proposed class members' consumer protection claims – not Massachusetts law.  Accordingly, plaintiffs' proposed nationwide consumer fraud allegations under Chapter 93A fail as a matter of law and should be stricken.

## II.   MATERIAL VARIATIONS IN STATE LAW MAKE IT IMPOSSIBLE TO CERTIFY A NATIONWIDE CLASS BASED ON PLAINTIFFS' COMMON LAW CLAIMS

### A.   The Putative Class Members' Claims Are Governed By The Laws Of All 50 States And The District Of Columbia

Massachusetts applies different choice-of-law tests to claims sounding in tort, including

plaintiffs' claims for negligence and breach of fiduciary duty, and those sounding in contract, such as plaintiffs' claims for breach of express and implied warranty.  *See Harrigan v. New England Dragway, Inc.*, No. 13-10132-JCB, 2014 WL 12589625, at \*4-5 (D. Mass. Jan. 2, 2014) (applying tort-based conflict-of-law test to negligence claims); *Woodward Sch. for Girls, Inc. v. City of Quinc*y, 13 N.E.3d 579, 600 (Mass. 2014) (noting that "an action for breach of fiduciary duty . . . sounds in tort, and arises by operation of law rather than by contractual obligation") (citations omitted); *Rottner v. AVG Techs. USA, Inc.*, 943 F. Supp. 2d 222, 227 (D. Mass. 2013) (Stearns, J.) (applying contract-based choice-of-law test to warranty claims).  Both tests, however, point to the application of the law of the state where each proposed class member resides and presumably received care from physicians who used eCW's EHR system.

*First*, Massachusetts applies the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws to tort claims.  *See Burleigh v. Alfa Laval, Inc.*, 313 F. Supp. 3d 343, 351 (D. Mass. 2018) (citing *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832 (Mass. 1994)).  The factors to be considered in determining which state has a "more significant relationship" to an action include: "[1] the place where the injury occurred, [2] the place where the conduct causing the injury occurred, [3] the domicile, residence, nationality, place of incorporation and place of business of the parties," in particular of the plaintiff, *see Burleigh*, 313 F. Supp. 3d at 352 (citations omitted), and "[4] the place where the relationship, if any, between the parties is centered," Restatement (Second) of Conflict of Laws § 145(2).

As this Court has previously recognized, unless these factors show that "another state has a more significant relationship to the underlying cause of action, tort claims remain governed by the law of the state in which the alleged injury occurred."  *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 260 (D. Mass. 2012) (Stearns, J.), *aff'd*, 740 F.3d 74 (1st Cir. 2014); *see also Asymmetrx Med., Inc. v. McKeon*, 932 F. Supp. 2d 232, 238 (D. Mass. 2013).  Accordingly, courts applying

7

this test regularly conclude that where a plaintiff encounters alleged misconduct in his or her home state and suffers alleged injury there, that state's law applies, even if the conduct emanated from the actions of a company located in another state. *See, e.g.*, *Burleigh*, 313 F. Supp. 3d at 351-59 (Maine law applied to claim brought by Maine resident who allegedly contracted mesothelioma in Maine as a result of his exposure to asbestos in that state even though product at issue was manufactured in Massachusetts); *see also Ogburn-Sisneros v. Fresenius Med. Care Holdings, Inc.*, No. 2013-05050, 33 Mass. L. Rptr. 59, at *2-7 (Super. Ct. Oct. 19, 2015) (Colorado law applied to claim brought by Colorado resident exposed to and allegedly injured in Colorado by product made by a Massachusetts company).

This Court has similarly held that the state in which a plaintiff encounters the defendant's alleged tortious conduct and is allegedly injured by it governs his or her claims.  For example, in *Geshke*, the Court held that claims for negligence and breach of warranty against a Colorado-based manufacturer of allegedly defective shoes were governed by Massachusetts law where the plaintiff's child was allegedly injured while wearing the shoes in Massachusetts because the "'contacts' identified by the Restatement as the critical considerations to be weighed in deciding the choice of law lean" toward this state.  889 F. Supp. 2d at 260.  The same principle noted above with respect to claims brought under the similar "significant relationship" test set forth in the Restatement provision governing fraud and misrepresentation claims – that a state's "interest in applying its own laws to protect [its] consumers would outweigh any secondary interest" an alleged tortfeasor's home state "might have in policing the conduct of [its] corporations in other states" – is equally applicable to claims alleging tortious conduct against a corporation.  *Faherty*,

2011 WL 810178, at *4-5 (citation omitted).[2]

Here, too, the relevant Restatement factors clearly point to the application of the law of the state where each proposed class member (or his or her decedent) lived and presumably received medical treatment.  As an initial matter, "the place where the injury occurred" favors the law of each proposed class member's home state because plaintiffs allege that they or their decedents have been injured by their inability to "rely on the accuracy and integrity of their healthcare records," which would have been maintained by their physicians in the states where the patients lived and received treatment.  (FAC ¶¶ 66, 71, 77, 84, 93.)  The second factor, "the place where the conduct causing the injury occurred," also points to the proposed class members' home states.  Plaintiffs allege that the proposed class members' purported "injuries" were caused by the display of "incorrect medical information" in their patient files, which also would have occurred where they lived and received treatment.  (*Id.* ¶ 8.)  In addition, the third Restatement factor, "the domicile, residence, nationality, place of incorporation and place of business of the parties" is either neutral or favors the law of the proposed class members' home states because, as courts have noted, the "mere fact that a . . . defendant is a resident of Massachusetts does not create a substantial interest" in any claim against it.  *Burleigh*, 313 F. Supp. 3d at 354 (citation omitted).  And the fourth factor, "the place where the relationship, if any, between the parties is centered" weighs in favor of applying the proposed class members' home states' laws because

---

[2]       The Court reached a different conclusion in *Watkins v. Omni Life Science, Inc.*, 692 F. Supp. 2d 170 (D. Mass. 2010) (Stearns, J.), holding, in a single-plaintiff product-liability action, that the state in which a product manufacturer was located had an "interest in regulating the conduct of businesses operating under its laws" that "trump[ed] any interest that [the state of the plaintiff's residence] might have."  *Id.* at 175.  But this holding is at odds with the Court's acknowledgment in that same case that the "Massachusetts choice-of-law rules" provide that tort claims are generally "governed by the law of the state in which the injury occurred."  *Id.* at 174.  Further, the Court's subsequent rulings in *Geshke* and *Faherty* make clear that the law of the place where the defendant's conduct allegedly results in harm has the most significant interest in tort claims, rather than the home state of the defendant.

any possible relationship the proposed class members have with eCW arose when they or their decedents received medical treatment and had their medical information recorded using eCW's software.  *See id.* at 355 (relationship "centered" in state of exposure to alleged misconduct); *Ogburn-Sisneros*, 33 Mass. L. Rptr. 59, at *3 (noting that the "only connection" between patient and drug manufacturer is state of treatment).  Accordingly, the proposed class members' home states have the "most significant relationship" to their tort-based claims.[3]

**Second**, plaintiffs' contract-based claims for breach of express and implied warranty are similarly governed by the law of each state in which the putative class members' healthcare providers purchased and used eCW's software.  Restatement (Second)'s choice-of-law test for contract-based claims considers five relevant factors:  "[1] the place of contracting, [2] the place of negotiation of the contract, [3] the place of performance, [4] the location of the subject matter of the contract, and [5] the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflict of Laws § 188(2).  Further, in performing a choice-of-law analysis for contract-based claims, courts should consider the

---

[3]     Restatement (Second) § 6 offers seven additional factors to be considered in making choice-of-law decisions, including:  "[1] the needs of the interstate and international systems, [2] the relevant policies of the forum, [3] the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue, [4] the protection of justified expectations, [5] the basic policies underlying the particular field of law, [6] certainty, predictability and uniformity of result, and [7] ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws § 6.  To the extent they are relevant, these factors point to the same result.  In particular, in the bulk of cases, a plaintiff's home state will have a greater interest in the action than will Massachusetts.  *See Burleigh*, 313 F. Supp. 3d at 354-55 (noting Massachusetts's reduced interest in "holding its resident defendant accountable" because "the injury took place in Maine and involved a Maine resident").  In addition, the parties shared a justifiable expectation that the proposed class members' home states' laws would apply because they had "no contact with [the] products in Massachusetts."  *Id.* at 358; *see also Ogburn-Sisneros*, 33 Mass. L. Rptr. 59, at *7.  And applying the laws of the plaintiffs' home states will "foster[] . . . 'certainty' and predictability" because "the state where the injury occurred will usually be readily ascertainable."  *Burleigh*, 313 F. Supp. 3d at 358 (citation omitted).

Restatement (Second) § 6 factors, which include the interests of the relevant states and the justified expectations of the parties.  *See Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co.*, 803 N.E.2d 750, 753-54 (Mass. App. Ct. 2004).

In applying these principles to cases involving the use of software and analogous goods designed in one state but used in another, this Court and others have repeatedly held that the law of the latter has the most significant interest in the plaintiffs' claims.  *See, e.g.*, *Rottner*, 943 F. Supp. 2d at 227; *In re NeuroGrafix ('360) Patent Litig.*, 5 F. Supp. 3d 146, 152 (D. Mass. 2014) (Stearns, J.) (finding that the state of "Washington clearly ha[d] the most significant relationship to [a contract]" for the sale of intellectual property because the contract's purpose was to enable the use of intellectual property in Washington); *Dumont Tel. Co. v. Power & Tel. Supply Co.*, 962 F. Supp. 2d 1064, 1073 (N.D. Iowa 2013) (under Iowa interpretation of the Restatement, sale of computer hardware is governed by the law of the state in which it was purchased and used); *see also F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F. Supp. 2d 961, 967, 973 n.15 (N.D. Ind. 1999) (finding that the law of the state in which software was "purchase[d], . . . adapt[ed], and ultimately demonstrate[d]" governed contract-based claims).  In *Rottner*, for example, this Court dismissed a putative class action alleging breach of warranty and other claims against a defendant that sold and distributed software over the internet.  *Rottner*, 943 F. Supp. 2d at 227.  The Court held that, absent a choice-of-law provision, the state in which the plaintiff "purchased" and "installed" the software was the place where "the contract was formed, negotiated and performed," and therefore its law controlled.  *Id.*

The same is true here.  Plaintiffs' warranty claims are based on the allegation that a contract was formed when the proposed class members' healthcare providers purchased the right to use eCW's software.  (FAC ¶ 80.)  Assuming, *arguendo*, that such allegations could give rise to an actionable warranty claim by plaintiffs, there can be no question that these transactions

occurred in the states where the proposed class members' physicians practice and treated the proposed class members. Similarly, any alleged express or implied representations made to the proposed class members' physicians about eCW's software would have been received in those states. And any performance on this purported contract also would have occurred in the states where the proposed class members were treated, because that is where the software was intended to be used. As a result, absent a choice-of-law provision, eCW reasonably expected that claims arising from its sale of the software – or representations about it – would be governed by the law of the state in which that sale was made.[4] Further, the proposed class members' home states have a greater interest in obtaining redress for their purportedly injured residents than Massachusetts could possibly have in regulating eCW's conduct in other states.

For all of these reasons, the law of the state in which each proposed class member's healthcare provider used eCW's software – which, in most cases, is presumably the proposed class member's home state – governs his or her contract-based claims.

### B.     The Applicable States' Laws Vary In Material Ways, Rendering A Nationwide Class Patently Uncertifiable

There is no way to manageably resolve the claims of proposed class members from across the country jointly in a single trial because the different state laws applicable to the proposed class members' common law claims would vary in significant ways, resulting in impossibly complicated jury instructions and a hopelessly confused jury.

*First*, courts have repeatedly held that nationwide classes alleging claims for ***breach of express and/or implied warranty*** are inappropriate because these causes of action vary from

---

[4]     Some eCW contracts with healthcare providers contain a choice-of-law provision providing that the "Agreement, its validity, construction, and effect shall be governed by the laws of the Commonwealth of Massachusetts." The named plaintiffs' healthcare providers' contracts (attached to eCW's motion to dismiss) did ***not*** contain this provision.

state to state.  *See, e.g.*, *Camey*, 2016 WL 10998440, at *7 (striking nationwide class claims

based on express and implied warranty allegations because "[t]here are tremendous differences

among state warranty laws"); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007)

(reversing order certifying nationwide class of car purchasers alleging breach of warranty

because "there are numerous variations in the substantive laws of express and implied warranty

among the fifty-one jurisdictions"); *Reedy*, 2018 WL 1413087, at *13 (striking proposal for

nationwide breach-of-warranty class because "[d]ifferent warranty laws will also apply to class

members' claims"); *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at

*11-12 (N.D. Cal. Aug. 15, 2016) (denying certification of nationwide class because the express

and implied warranty laws varied in "material" ways across the 50 states); *Rikos v. Procter &*

*Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *5-7 (S.D. Ohio Feb. 28, 2012); *In re Ford*

*Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 489 (D.N.J. 2000) (denying

certification of nationwide class in part because laws regarding breach of the implied warranty of

merchantability "vary significantly from state to state").

     In *Rikos*, for example, the court granted a motion to strike a proposed nationwide class of

purchasers of an over-the-counter digestive supplement alleging claims for breach of express

warranty on the ground that "[n]o discovery will change the simple fact that different states have

different elements for claims of breach of express warranty, and the [c]ourt finds that these

variations are material."  2012 WL 641946, at *6; *see also id.* at *5 (noting that the defendant

had identified "at least four material variations in the express warranty laws of the states"); *see*

*also Camey*, 2016 WL 10998440, at *7 (explaining that "certain states 'require a strict showing

of reliance,' whereas others 'have no reliance requirement,' and some 'have applied a rebuttable

presumption of reliance' in express warranty cases" and that states also "have conflicting views

on privity in implied warranty cases") (citation omitted); *Tasion Commc'ns, Inc. v. Ubiquiti*

*Networks, Inc.*, 308 F.R.D. 630, 635 (N.D. Cal. 2015) (denying motion for class certification and citing to conflicting state laws governing claims for breach of express warranty, including variations with respect to privity, pre-litigation notice and reliance requirements); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking nationwide class allegations in part because express warranty claims "would be subject to the differing state laws").

Variations among state laws with respect to express warranty, like those identified by the court in *Rikos*, abound.  For example:

- *Privity.*  Some states, such as Florida, Arizona and Kentucky, have strict privity requirements.  *See, e.g.*, *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012); *Flory v. Silvercrest Indus., Inc.*, 633 P.2d 383, 387 (Ariz. 1981); *Munn v. Pfizer Hosp. Prods. Grp., Inc.*, 750 F. Supp. 244, 248 (W.D. Ky. 1990).  By contrast, other states, such as California, Alabama and Maryland, require privity between the parties but provide exceptions in certain circumstances, such as reliance on a seller's representations or an allegation of personal injury.  *See, e.g.*, *Coleman v. Bos. Sci. Corp.*, No. 1:10-cv-01968-OWW-SKO, 2011 U.S. Dist. LEXIS 96315, at *11 (E.D. Cal. Aug. 29, 2011); *Barré v. Gulf Shores Turf Supply, Inc.*, 547 So. 2d 503, 504 (Ala. 1989); *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 995 (Md. Ct. Spec. App. 2007), *aff'd*, 942 A.2d 722 (Md. 2008).  And still other states, such as Washington, South Carolina and New Jersey, do not require privity at all.  *See, e.g.*, *Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*, 90 P.3d 1062, 1065 (Wash. 2004); S.C. Code Ann. § 36-2-318; *Arons v. Rite Aid Corp.*, No. BER-L-4641-03, 2005 WL 975462, at *22 (N.J. Super. Ct. Law Div. Mar. 23, 2005).  These differences are critical in this case because plaintiffs do not allege that any of the proposed class members ever interacted directly with eCW, meaning that privity will be a central issue in this case if it proceeds.

- *Reliance.*  Reliance is not an element of an express warranty claim in Colorado and Virginia.  *See, e.g.*, *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 644-45 (10th Cir. 1991); *Daughtrey v. Ashe*, 413 S.E.2d 336, 338-39 (Va. 1992).  By contrast, other states, including Minnesota, Florida and Rhode Island, require proof of reliance to state a claim for breach of express warranty.  *See, e.g.*, *In re RFC & ResCap Liquidating Tr. Litig.*, No. 13-cv-3451 (SRN/JJK/HB) et al., 2015 WL 3756476, at *4 (D. Minn. June 16, 2015); *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860-CIV, 2007 WL 5960207, at *13 (S.D. Fla. May 15, 2007); *Sheehan v. N. Am. Mktg. Corp.*, C.A. No. 05-364 S, 2008 WL 896152, at *5 (D.R.I. Apr. 2, 2008) (citing *Thomas v. Amway Corp.*, 488 A.2d 716, 720 (R.I. 1985), *aff'd*, 610 F.3d 144 (1st Cir. 2010).  By even further contrast, some states, such as Hawaii and Illinois, recognize a rebuttable presumption of reliance.  *See, e.g.*, *Torres v. Nw. Eng'g Co.*, 949 P.2d 1004, 1015 (Haw. Ct. App. 1997); *Felley v. Singleton*, 705 N.E.2d 930, 934-35 (Ill. App. Ct. 1999).  Such differences would affect whether each proposed class

member would have to adduce facts at trial capable of establishing that his or her doctor expressly relied on any alleged misstatements by eCW in deciding to use the EHR system.

- **Notice.** Some states require plaintiffs in express warranty actions to give notice to the manufacturer or the seller of the products, while others do not require notice in certain circumstances.  In California, for example, a plaintiff must provide pre-suit notice to the product manufacturer within a reasonable time of discovering the breach of express warranty, in cases where the consumer purchased directly from the manufacturer.  *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014).  Alaska and Wyoming also require a plaintiff alleging breach of express warranty to give pre-suit notice to the product manufacturer.  *See, e.g.*, *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 285 (Alaska 1976); *W. Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806, 811 (Wyo. 1980).  Other states, including Oklahoma and North Carolina, recognize an exception to the notice requirement where a cause of action is filed by a lay consumer within the statute of limitations and the policies behind the notice requirement are satisfied.  *See, e.g.*, *Buzadzhi v. Bexco Enters., Inc.*, No. 10-CV-247-GKF-PJC, 2011 WL 43086, at *3 (N.D. Okla. Jan. 4, 2011); *Maybank v. S. S. Kresge Co.*, 273 S.E.2d 681, 685 (N.C. 1981).  Thus, whether each proposed class member can prevail on his or her claims will vary based on whether his or her state requires pre-suit notice and if so, whether he or she can prove such notice was provided.

Variations in state laws governing implied warranty claims also preclude certification of multistate class actions.  For example, in *Darisse*, 2016 WL 4385849, the court denied certification of a nationwide class of purchasers of Wi-Fi-enabled thermostats alleging, *inter alia*, claims for breach of implied warranty in light of variations in state laws with respect to this cause of action.  *Id.* at *12.  As the court explained, "[t]he fifty states' laws on the implied warranties of merchantability and fitness for a particular purpose have significant differences regarding privity, notice, the availability of class actions, and the definition of merchantability." *Id.*; *see also Cole*, 484 F.3d at 726 (declining to certify class asserting claims for breach of implied warranty in light of material variations in the applicable states' laws); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) (denying motion to certify nationwide class of car owners alleging breach of the implied warranty of merchantability in part because "numerous courts have recognized that there are significant variances among the interpretation of

15

the elements of an implied warranty of merchantability claim among the states"); *In re Ford Motor Co. Ignition Switch*, 194 F.R.D. at 489 (denying motion to certify a nationwide class in part because laws regarding breach of the implied warranty of merchantability "vary significantly from state to state").  A survey of state law confirms these courts' conclusions.  For example:

- **Definition of "Merchantability."**  States define the term merchantability differently for purposes of implied warranty claims.  Under Delaware law, the standard for merchantability asks whether "the design has created a risk of harm which is so probable that an ordinarily prudent person, acting as a manufacturer, would pursue a different available design which would substantially lessen the probability of harm." *Nacci v. Volkswagen of Am., Inc.*, 325 A.2d 617, 620 (Del. Super. Ct. 1974).  Massachusetts law holds that "the implied warranty of merchantability does not require sellers to provide flawless goods . . . '[it] is primarily directed at the operative essentials of a product . . . . It is not intended to guarantee high quality or perfection of detail.'"  *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 201 (D. Mass. 2014) (third alteration in original) (citation omitted).  In California, a breach of the implied warranty of merchantability means "the product did not possess even the most basic degree of fitness for ordinary use."  *Mocek v. Alfa Leisure, Inc.*, 7 Cal. Rptr. 3d 546, 549 (Ct. App. 2003) (citing Cal. Com. Code § 2314(2)).  Accordingly, proposed class members from different states will have to satisfy different standards to prove that eCW's EHR system was not merchantable, making it impossible for a jury to provide a single, classwide verdict on this issue.

- **Privity.**  Privity is required in states such as California, Georgia, Wisconsin and Florida.  *See, e.g.*, *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 109 Cal. App. 4th 1162, 1169 (2003); *Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 561 (Ga. 1996); *Renaissance Learning, Inc. v. Omron Corp.*, 757 N.W.2d 850 (table), 2008 WL 3389702, at *4 (Wis. Ct. App. 2008) (per curiam); *Powers v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-1542T17EAJ, 2006 WL 373011, at *2 (M.D. Fla. Feb. 16, 2006).  But Texas, South Carolina and Indiana courts have held that a plaintiff can state a claim for breach of implied warranty in the absence of privity.  *See, e.g.*, *Shows v. Man Engines & Components, Inc.*, 364 S.W.3d 348, 355 (Tex. App. 2012), *aff'd*, 434 S.W.3d 132 (Tex. 2014); *Wilson v. Style Crest Prods., Inc.*, 627 S.E.2d 733, 738 n.7 (S.C. 2006); *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005).  Once again, the existence of a privity requirement will affect whether proposed class members who have had no direct dealings with eCW can recover as a matter of law.

- **Notice.**  Illinois, Arkansas and Texas require pre-suit notice to bring a claim for breach of implied warranty.  *See Schreib v. Walt Disney Co.*, No. 1-05-0094, 2006 WL 573008, at *5 (Ill. App. Ct. Feb. 1, 2006); *Adams v. Wacaster Oil Co.*, 98 S.W.3d 832, 835-36 (Ark. Ct. App. 2003); *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d

16

194, 202 (Tex. App. 2003).  Georgia, Virginia and New York courts have held that
the filing of the complaint can provide sufficient notice of a claim for breach of
implied warranty depending on the circumstances of the case.  *See Hudson v. Gaines*,
403 S.E.2d 852, 854 (Ga. Ct. App. 1991); *Bd. of Dirs. of Bay Point Condo. Ass'n v.
RML Corp.*, 57 Va. Cir. 295 (2002); *Panda Capital Corp. v. Kopo Int'l, Inc.*, 662
N.Y.S.2d 584, 586 (App. Div. 1997).  And Massachusetts law provides that failure to
give notice does not bar recovery unless the seller proves that it was prejudiced by the
lack of notice.  Mass. Gen. Laws ch. 106, § 2-318; *see also Swartz v. Gen. Motors
Corp.*, 378 N.E.2d 61, 63 (Mass. 1978).

As *Rikos* and other cases have recognized, there is no manageable way to conduct a nationwide

class trial addressing warranty claims in light of these differences.

   **Second**, there are also material differences in state laws with respect to claims for **breach**

**of fiduciary duty** that would make a nationwide class trial unworkable.  As the Fifth Circuit

explained in affirming denial of certification of a nationwide class alleging such claims, "[w]hile

the basic principles of fiduciary law may be the same throughout the country, the nuances vary,

and those nuances affect the outcome of claims."  *Casa Orlando Apartments, Ltd. v. Fed. Nat'l

Mortg. Ass'n*, 624 F.3d 185, 194 (5th Cir. 2010).  Numerous other courts have held similarly.

*See, e.g.*, *Marshall v. H & R Block Tax Servs. Inc.*, 270 F.R.D. 400, 409 (S.D. Ill. 2010) (denying

certification of multistate class alleging breach of fiduciary duty; "the fiduciary duty laws of the

11 class states [contained] material differences in several key respects"); *Doll v. Chi. Title Ins.

Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (similar as to 18 different jurisdictions); *Rohlfing v.

Manor Care, Inc.*, 172 F.R.D. 330, 341 (N.D. Ill. 1997) ("[E]ven if we assume that fiduciary

duty law, in its broad outlines, is similar from state to state, it may be meaningfully different with

respect to its nuances.").

   Most notably, state laws vary with respect to the very definition of a fiduciary

relationship.  In some states, such as Illinois, Missouri and New Jersey, establishing a fiduciary

relationship requires a showing that the defendant had dominance or superiority over the

plaintiff.  *See Peterson v. H & R Block Tax Servs., Inc.*, 971 F. Supp. 1204, 1212 (N.D. Ill.

1997); *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998);

*McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002).  By contrast, states such as Florida and

Massachusetts require that trust or confidence exist between the parties.  *See Gracey v. Eaker*,

837 So. 2d 348, 352 (Fla. 2002); *Van Brode Grp., Inc. v. Bowditch & Dewey*, 633 N.E.2d 424,

428 (Mass. App. Ct. 1994).  And a fiduciary relationship arises under New York law where one

party is under a "a duty to act for or to give advice for the benefit of another upon matters within

the scope of the relation.'" *Pergament v. Roach*, 838 N.Y.S.2d 591, 593 (App. Div. 2007)

(citation omitted).  Because there is – at best – an attenuated relationship between eCW and the

proposed class members, whether a given class member has established that a fiduciary duty

exists at all will be a significant question at trial.  Thus, these differences in the applicable

standards for imposing a duty are material and would make a classwide finding on this claim

nearly impossible.

   ***Third***, it is also well recognized that differences in the ***negligence*** laws of the various

states similarly preclude a single trial of the claims of plaintiffs from all 51 jurisdictions.  As the

Seventh Circuit explained in *In re Rhone-Poulenc Rorer Inc*., 51 F.3d 1293 (7th Cir. 1995),

"[t]he law of negligence, including subsidiary concepts such as duty of care, foreseeability, and

proximate cause" differs among the states in "important" ways.  *Id.* at 1300; *see also In re Am.*

*Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (rejecting certification of nationwide class

alleging negligence claims in part because "[i]f more than a few of the laws of the fifty states

differ, the district judge would face an impossible task of instructing a jury on the relevant law");

*Hale v. Enerco Grp., Inc.*, 288 F.R.D. 139, 147 (N.D. Ohio 2012) (rejecting proposed nationwide

class alleging negligent failure to warn and negligent design, testing and certification based on

purchase of allegedly defective heaters in light of variations in state negligence laws; "the [c]ourt

anticipates that the jury would be inundated with voluminous instructions expressing diverse

formulations not just of negligence but of the defenses associated with negligence"); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 423 (E.D. La. 1997) (rejecting multi-state negligence class, noting that "[a]lthough one can point to obvious common elements in the negligence law of each state (duty, breach, proximate cause, and injury), plaintiffs have not shown the [c]ourt that it is possible to give one negligence instruction which would account for all the varying nuances that state lawgivers command").

As one court recently noted in denying certification of a proposed 21-state class alleging negligence claims based on a retailer's implementation of a credit pre-authorization program, there are "several potential issues involving the law of negligence among the various states that could predominate," including "varying sources of the standard of care, application of the economic loss rule in the various states which could bar recovery in the absence of physical injury or property damage, and distinctions between comparative or contributory fault among the states." *Teggerdine v. Speedway, LLC*, No. 8:16-cv-03280-T-27TGW, 2018 U.S. Dist. LEXIS 91043, at *14-15 (M.D. Fla. May 31, 2018).

Once again, the variations identified by these courts are not just theoretical. For example, as explained in eCW's motion to dismiss, plaintiffs allege that eCW's purported negligence caused them injury in that eCW's software failed to live up to the decedents' expectations with regard to maintaining the "accuracy or integrity of their healthcare records" (FAC ¶ 71), and seek damages in the form of the "cost of investigation and remediation of compromised healthcare records" (*id.* ¶ 72). But the laws of many states – including both New York and Vermont, which govern the named plaintiffs' claims in this case – provide that a plaintiff may not recover in negligence for purely economic losses absent personal injury or damage to property. (*See* Mot. to Dismiss FAC at 13-14.) By contrast, other states, such as Arkansas and Washington, allow plaintiffs to recover on a negligence theory even where the damages are solely economic in

nature.  *See Farm Bureau Ins. Co. v. Case Corp.*, 878 S.W.2d 741, 743-44 (Ark. 1994); *In re Genetically Modified Rice Litig.*, No. 4:06MD1811 CDP, 2009 WL 4801399, at *2 (E.D. Mo. Dec. 9, 2009) ("Arkansas does not currently recognize the economic loss doctrine."), *adhered to on reconsideration*, No. 4:06MD1811 CDP et al., 2011 WL 5024548 (E.D. Mo. Oct. 21, 2011); *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 243 P.3d 521 (Wash. 2010) (en banc).

In addition, state law also differs as to whether a jury may apportion fault to non-parties, which is particularly relevant in this case because there may be a credible claim that some proposed class members' alleged injures are the result of negligence on the part of their medical providers in maintaining their health records – not eCW's software.  While states such as Alaska, Minnesota and Pennsylvania allow the jury to apportion fault to non-parties to reduce the defendant's liability, *see* Alaska Stat. § 09.17.080; *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 71, 80 (Minn. 2012); 42 Pa. Cons. Stat. § 7102(a.2), the jury may not consider the negligence of nonparties in other states.  *See, e.g.*, *Harlow v. Voyager Commc'ns V*, 501 S.E.2d 72, 74 (N.C. 1998); *Humphries v. Eighth Jud. Dist. Ct.*, 312 P.3d 484, 489 (Nev. 2013).

In short, individualized legal issues clearly predominate over common ones, and these variations would render any nationwide class trial entirely unmanageable due to an impossibly complicated verdict form.

## CONCLUSION

For the foregoing reasons, the Court should grant eCW's motion to strike the nationwide class allegations in plaintiffs' First Amended Complaint.

Dated:  November 29, 2018                     Respectfully submitted,
        Boston, Massachusetts

                                      /s/ James R. Carroll
                                      James R. Carroll (BBO #554426)
                                      SKADDEN, ARPS, SLATE
                                        MEAGHER & FLOM LLP
                                      500 Boylston Street

Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com

Jessica D. Miller (admitted *pro hac vice*)
Geoffrey M. Wyatt (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 393-5760
jessica.miller@skadden.com
geoffrey.wyatt@skadden.com

Counsel for Defendant
eClinicalWorks, LLC

## CERTIFICATE OF SERVICE

     I, James R. Carroll, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants, if any, on November 29, 2018.

Dated: November 29, 2018           /s/ James R. Carroll
                               James R. Carroll